UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| CHEYENNE N., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:20-CV-927-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff Cheyenne N. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied his application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 15).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 13, 14. Plaintiff also filed a reply. *See* ECF No. 16. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 13) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 14) is **GRANTED.**

## <u>BACKGROUND</u>

On November 17, 2016, Plaintiff protectively filed his SSI application, alleging disability beginning November 13, 2015 (the disability onset date), due to (among other things) memory loss; non-epileptic seizures; hyperthyroid; hypertension; and depression/anxiety. Transcript ("Tr.") 253-69, 292. Plaintiff's claim was denied initially on January 12, 2017, after which he requested an administrative hearing. Tr. 25. On March 1, 2019, Administrative Law Judge Paul

Georger (the "ALJ") conducted a video hearing in Buffalo, New York. Tr. 25, 49-83. Plaintiff appeared and testified from Charlotte, North Carolina, and was represented by Nicholas DiVirgilio, an attorney. *Id*. Rachel A. Duchon, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on May 31, 2019, finding that Plaintiff was not disabled. Tr. 25-36. On May 26, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1-7. The ALJ's May 31, 2019 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II.   The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful

work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his May 31, 2019 decision:

1. The claimant has not engaged in substantial gainful activity since November 17, 2016, the application date (20 CFR 416.971 *et seq*.);

2. The claimant has the following severe impairments: seizure disorder with syncope; and left-sided pain and weakness secondary to possible inflammatory liver disease (20 CFR 416.920(c));

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926);

4. The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416. 967(a)[1] except the claimant can occasionally climb ramps, stairs, ladders, ropes, and scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl. The claimant can occasionally be exposed to unprotected heights, work around moving mechanical parts, and operate a motor vehicle. He requires a sit/stand option changing positions every 20 minutes. He can occasionally handle, finger, and feel with his left hand;

5. The claimant has no past relevant work (20 CFR 416.965);

6. The claimant was born on August 9, 1981 and was 35 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963);

7. The claimant has a marginal education and is able to communicate in English (20 CFR 416.964);

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968);

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a);

10. The claimant has not been under a disability, as defined in the Social Security Act, since November 17, 2016, the date the application was filed (20 CFR 416.920(g)).

---

[1] "Sedentary" work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

Tr. 25-36.

Accordingly, the ALJ determined that, based on the application for supplemental security benefits filed on November 17, 2016, the claimant is not disabled under section 1614(a)(3)(A) of the Act. Tr. 36.

## ANALYSIS

Plaintiff's sole argument is that the ALJ's RFC finding was not based on substantial evidence because the ALJ improperly rejected all the medical opinions of record and instead relied on his "lay opinion" in formulating the RFC. *See* ECF No. 13-1 at 7-10.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the ALJ's detailed and well-reasoned decision, the Court finds that the ALJ properly considered the entire record, including Plaintiff's treatment notes, his subjective complaints and activities of daily living, and the medical opinion evidence, and his finding that Plaintiff retained the RFC for sedentary work was supported by substantial evidence.

Although Plaintiff has been treated multiple times at the emergency department ("ED") for various complaints and symptoms during the relevant time period, medical records from treating and examining sources are noticeably lacking. In November 2016, Plaintiff established primary care with Danielle Casillo, AGPCNP-BC ("Ms. Casillo"), of Luis Melgar, Physician, P.C. ("Dr. Melgar's Office"). Tr. 405. Plaintiff stated he was feeling ill and had not seen a doctor in many

years. *Id*. He reported having anxiety and stress, as well as seizures and memory issues. *Id*. He stated that his seizures began in 2008 after he was struck by a car while riding a bike. *Id*. He reported having three to four seizures per work for the preceding six months; and he had been on antiepileptics in the past, but they made him "feel like a zombie." *Id*.  Upon examination, Plaintiff "appear[ed] older than stated age and acutely ill." Tr. 406. His blood pressure was 182/100; and he had mild thromegaly, marked tenderness on palpation in the right upper quadrant, cyanosis of the bilateral lower extremities, and tremor in the right upper extremity. Tr. 406-07. Ms. Casillo prescribed Lisinopril, Omeprazole, and Pantoprazole, and made several referrals, including to a neurologist. Tr. 407. On December 1, 2016, Plaintiff reported a decrease in seizures over the preceding month. Tr. 399. He also reported that he had not seen the neurologist because his insurance was not accepted. *Id*.

On January 11, 2017, non-examining state agency psychological consultant C. Butensky, Ph.D. ("Dr. Butensky"), reviewed the record at the time and found there was insufficient evidence in the files to evaluate Plaintiff's claim. Tr. 88-89.

On August 22, 2017, Plaintiff treated with Faith Sgroi, NP ("Ms. Sgroi"), of Buffalo Rheumatology and Medicine PLLC ("Buffalo Rheumatology"), for a lupus evaluation. Tr. 514-17. Plaintiff complained of 8/10 severity "all over joint pain" and balance problems; and he reported an eight-month history of frequent infections, pain in the left hip, locking in his fingers, lower leg swelling, and increased fatigue. Tr. 514. Plaintiff also reported dyspepsia, nausea, dysuria, frequency, hematuria, urgency, joint pain, morning stiffness, joint swelling, weakness, and tingling. Tr. 515.

On examination, Plaintiff ambulated with a cane in his right hand, and had mild bilateral wrist and ankle synovitis, bilateral tenderness in the wrists, mild tenderness bilaterally in his

phalangeal joints, mild tenderness in the left trochanter, and bilateral tenderness in the Achilles tendon. Tr. 516. Plaintiff was assessed with pain in right hand, pain in left hand, pain in right hip, pain in left hip, pain in right ankle and joints of right foot, and pain in left ankle and joints of left foot. Tr. 516-17. Ms. Sgroi suspected inflammatory arthritis and also questioned SLE (systemic lupus erythematosus) due to Plaintiff's recent low white blood cell count and low platelet count with an increase of infections. Tr. 516. She ordered additional lab tests and x-rays and prescribed Prednisone 10 mg. *Id*.

On September 18, 2017, Plaintiff returned to Buffalo Rheumatology for a follow up with Harbrinder Sandhu, M.D. ("Dr. Sandhu"). Tr. 518. Plaintiff complained of lumps, fatigue, swelling in the legs and hands, tingling in the legs and arms, and muscle pain and joint pain in his hands, ankles, and left hip. He reported his pain as 7/10 in severity and said he could not tie his shoes because of stiffness in his hands. *Id*. He reported he had started Prednisone, which caused swelling, but he "did have some energy from it." *Id*. On examination, Plaintiff still ambulated with a cane in his right hand and had pain diffusely in the bilateral pharyngeal joints, left trochanter, and bilateral Achilles tendon. Tr. 519. Dr. Sandhu assessed "raised antibody titer" and noted that Plaintiff did not have his lab work done *Id*.  He stated there was no "true evidence of inflammatory arthritis at the present time," and there was "not enough evidence to diagnose [Plaintiff] with lupus or start him on a disease modifying regimen." *Id*.

On January 5, 2019, Plaintiff presented to the ED at Novant Health for a seizure (Tr. 666-71) and was prescribed Keppra. (Tr. 671).

On January 8, 2018, Plaintiff presented to ECMC Gastroenterology complaining of a 30-pound weight loss in six months and difficulty eating due to pain, nausea, and vomiting. Tr. 548. He was assessed by Kristin Webb, PA ("Ms. Webb"). Musculoskeletal and neurological review of

symptoms was negative. Tr. 549. Plaintiff was noted to have elevated liver function tests, and he was sent for lab work, imaging, and referral to hepatology. Tr. 550. As of March 9, 2018, Plaintiff reported fatigue, abdominal pain, diffuse joint pain and generalized muscle aches, leg weakness, difficulty walking, and depression. Tr. 552. Upon examination, Plaintiff appeared chronically ill and tired. Tr. 553. He had mild diffuse abdominal tenderness; he was using a cane; his judgment, insight, mood, and affect were normal; and his recent and remote memory were intact. Tr. 554. Ms. Webb suspected that Plaintiff's transaminase elevation was secondary to alcohol, and she referred him for an EGD (esophagogastroduodenoscopy) and a colonoscopy. Tr. 555. The record does not reflect any further records from this provider.

A claimant's RFC is the most he can still do despite his limitations and is assessed based on an evaluation of all the relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Furthermore, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d

Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole). Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted). Moreover, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Thus, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588.

Additionally, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

The ALJ's decision reflects that he first considered Plaintiff's treatment notes in reaching the RFC finding. Tr. 28-34. *See Monroe*, 676 F. App'x at 9 (finding that the ALJ could rely on treatment notes to formulate the RFC assessment). The ALJ noted that the treatment notes indicated that although Plaintiff had some limitations, his physical examinations were generally

unremarkable. Tr. 28-34. *See Prince v. Astrue*, 490 F. App'x 399, 400 (2d Cir. 2013) (noting that "disability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment.") (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983)). As indicated above, the ALJ accounted for Plaintiff's difficulties by restricting him to sedentary work, the least exertionally-demanding category of work. Tr. 28-29. *See* 20 C.F.R. § 416.967(a).

With respect to Plaintiff's seizures, the ALJ considered that despite Plaintiff's testimony of having three to four seizures per week while not on seizure medication, and one to two seizures per week while taking Keppra, this was not supported by the medical evidence. Tr. 28-34. In January 2016, prior to the application period, Plaintiff reported that he had not had seizures for two years, even after stopping his seizure medications. Tr. 334. In November 2016, around the time of his disability application date, Plaintiff presented to the ED with complaints of testicular pain. Plaintiff denied any other symptoms, and a neurological examination was normal. Tr. 471-72. That same month, Plaintiff reported having three to four seizures per month to Ms. Casillo, but his examination showed no focal neurological deficits. Tr. 405-07. During a follow-up visit with Dr. Melgar's Office in December 2016, Plaintiff reported a decrease in seizures and was prescribed Keppra until he could follow up with a neurologist. Tr. 399. In January 2017, Plaintiff again had a normal neurological examination. Tr. 483. Plaintiff similarly denied headache and syncope in March 2017. Tr. 626-27. In July 2017, Plaintiff presented to the ED and reported a seizure one month earlier, but review of symptoms was negative for dizziness, headache, and seizure activity. Tr. 648, 654. In February 2018, neurological examination was again normal. Tr. 539.

The ALJ also considered Plaintiff's complaints of left-side weakness and pain and related poor balance and gait issues. Tr. 28-34. During Plaintiff's November 2016 ED visit for testicular

pain, physical examination results, including musculoskeletal, were normal except for a tender right epididymis and antalgic gait due to testicular tenderness. Tr. 471-72. In addition, when Plaintiff presented to Dr. Melgar's Office in November 2016, despite cyanosis of the bilateral lower extremities, Plaintiff walked with a normal gait and he had full (5/5) muscle strength in both upper and lower extremities. Tr. 405-06. The next month, Dr. Melgar's Office noted that Plaintiff no longer had cyanosis. Tr. 398. In January 2017, examination of Plaintiff's upper and lower extremities was normal (Tr. 482-83), and in March 2017, Plaintiff similarly had full range of motion of the extremities, full (5/5) strength in all extremities, a steady gait, and only mild abdominal tenderness (Tr. 619, 625-27).

A few months later, in July 2017, Plaintiff presented to the ED complaining that he "passed out a few days ago and his left side felt numb." Tr. 648. Review of symptoms was negative for decreased range of motion, pain, swelling, and weakness. Tr. 655. On examination, Plaintiff was in no acute distress, had full and normal range of motion, no palpable tenderness, full (5/5) strength in all extremities, and sensation was grossly intact. Tr. 655. The record noted that Plaintiff's complaints were out of proportion to the examination, and there was no evidence of discomfort. Tr. 655.

As noted above, Plaintiff established care with Buffalo Rheumatology in August 2017. Tr. 514-20. Despite reporting pain and ambulating with a cane, Plaintiff had no restricted range of motion, no diffuse tender points, no point tenderness to the spine, normal sensation, and full (5/5) strength in the upper and lower extremities. Tr. 514. In September 2017, Dr. Sandhu found no evidence of inflammatory arthritis and insufficient evidence to diagnose Plaintiff with lupus or start him on a lupus treatment regimen. Tr. 519. Although Plaintiff was instructed to follow-up

with Buffalo Rheumatology after undergoing lab work, the record reflects no further treatment from this provider. Tr. 519.

During a February 2018 ED visit for abdominal pain, Plaintiff had tenderness to palpation of the upper abdomen, but his examination showed no evidence of swelling or any musculoskeletal abnormalities. Tr. 538-39. Plaintiff presented to the ED again in July 2018 and examination results showed a steady gait with no weakness or numbness. Tr. 490.

The ALJ also considered the medical opinions of record. Tr. 33-34. The ALJ gave no weight to Dr. Butensky's January 2017 assessment (Tr. 88-89), as it did not provide an opinion regarding Plaintiff's ability to perform basic mental work activities. Tr. 33. *See* 20 C.F.R. § 416.927(a)(1) (defining medical opinions as statements that reflect judgments about the nature and severity of a claimant's impairments, including what he could still do despite his impairment(s)). As previously noted, Dr. Butensky found that there was insufficient evidence in the files to evaluate the claim. Tr. 88-89.

The ALJ also considered a December 2016 letter written by Ms. Casillo. Tr. 33, 397. Ms. Casillo wrote that Plaintiff should be excused from work "from 12/01/2016 to 01/04/2016"[2] due to illness/injury. Tr. 397. The letter noted that Plaintiff was under Ms. Casillo's care for multiple medical conditions including seizure disorder which was currently uncontrolled, and that Plaintiff could not safely perform work duties until his symptoms were managed. The ALJ reasonably gave little weight to this opinion, as it commented only on a short period of inability to work and not on disability lasting for a continuous period of at least 12 months. Tr. 33. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3) (impairment must have been expected to last for a continuous period of at least twelve months). Moreover, the ALJ appropriately noted that the opinion was conclusory, on an issue

---

[2] The Court notes that the dates in Ms. Casillo's letter appear incorrect. *See* Tr. 397. The Court presumes that the letter intended to excuse Plaintiff from work from December 1, 2016 to January 4, 2017.

reserved to the Commissioner, and did not identify specific functional limitations. Tr. 33-34. *See* 20 C.F.R. § 416.927(d)(1) (opinions that a claimant is "disabled" or "unable to work" are not medical opinions, but are instead considered "opinions on issues reserved to the Commissioner"); *see also Taylor v. Barnhart*, 83 Fed. App's 347, 349 (2d Cir. 2013). As such, the ALJ properly concluded that Ms. Casillo's opinion that Plaintiff could not work was not entitled to any special significance. Tr. 33-34.

Plaintiff argues that the ALJ relied solely on his lay opinion, without explaining "the tether between the medical findings of record and the determination." *See* ECF No. 13-1 at 7-10. Plaintiff is incorrect, however, as the ALJ is tasked with considering the evidence in the record and reaching an RFC finding based on the record as a whole, not one that tracks any single medical opinion. *See Tricarico v. Colvin*, 681 F. App'x 98, 101 (2d Cir. 2017) (citing *Matta*, 508 F. App'x at 56. ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.")). Moreover, as noted above, genuine conflicts in the medical evidence are for the Commissioner to resolve. *Veino*, 312 F.3d at 588. Here, the ALJ resolved the conflicts by relying on treatment notes from Plaintiff's multiple ED visits, notes from Dr. Melgar's Office, Buffalo Rheumatology, and ECMC Gastroenterology, as well as Plaintiff's own statements as to his ability and activities of daily living, in concluding that Plaintiff remained capable of a limited range of sedentary work. Tr. 28-34.

Ultimately, it is Plaintiff who bears the burden of demonstrating functional limitations that preclude performance of any substantial gainful activity. *See* 20 C.F.R. § 416.945(a)(3) (the claimant is responsible for providing the evidence used in the RFC determination); *see Poupore*, 566 F.3d at 305-06 (The burden is on Plaintiff to show that he cannot perform the RFC as found

by the ALJ.). Plaintiff here has not met his burden of proving that he was more restricted than the ALJ found.

While Plaintiff may disagree with the ALJ's RFC finding, Plaintiff has not shown that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record. *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (The question is not whether there is substantial evidence to support the plaintiff's position, but whether there is substantial evidence to support the ALJ's decision.).

The substantial evidence standard is "a very deferential standard of review—even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise."). *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original). Thus, Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record. *Id*. at 448; *see also Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute its own judgment even if it might justifiably have reached a different result upon a *de novo* review). Plaintiff here failed to meet his burden of proving that no reasonable factfinder could have reached the ALJ's findings on this record.

For all these reasons, the Court finds that the ALJ appropriately considered the evidence of record, including the objective medical findings, the medical opinions, and Plaintiff's own testimony, and the ALJ's determination was supported by substantial evidence. Accordingly, the Court finds no error.

14

## <u>CONCLUSION</u>

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 13) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 14) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.


DON D. BUSH
UNITED STATES MAGISTRATE JUDGE